Matter of Roth (2022 NY Slip Op 04124)

Matter of Roth

2022 NY Slip Op 04124

Decided on June 28, 2022

Appellate Division, First Department

Per Curiam 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 28, 2022
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick,J.P.,
Barbara R. Kapnick
Anil C. Singh
Lizbeth González
Tanya R. Kennedy, JJ.

Motion No. 2022-00870 Case No. 2019-00091 

[*1]In the Matter of Pamela S. Roth (admitted as Pamela Susan Roth), an Attorney and Counselor-at-Law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Pamela S. Roth, (OCA Atty. Reg. No. 2422483), Respondent.

Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the Second Judicial Department on June 26, 1991.

Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York (Remi E. Shea, Esq., of counsel), for petitioner.
Thomas J. Foley, Esq., Foley Griffin, LLP, for respondent.

Per Curiam 

Respondent Pamela S. Roth was admitted to the practice of law in the State of New York by the Second Judicial Department on June 26, 1991, under the name Pamela Susan Roth. She was engaged in the practice of law within the First Judicial Department during certain of the events at issue.
In January 2021, the Attorney Grievance Committee (AGC) served respondent with a notice and petition of amended and supplemental charges (35 charges) alleging professional misconduct stemming from her representation of seven clients.
The AGC and respondent now jointly move pursuant to the Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.8(a)(5) for discipline by consent and request the imposition of a two-year suspension, and for her successful completion of the New York City Bar Association's Lawyer Assistance Program (LAP). The motion is supported by a joint affirmation containing a statement of facts, conditional admissions of professional misconduct, factors in aggravation, mitigation, and agreed upon discipline. The motion is also accompanied by respondent's affidavit acknowledging her admission to the stipulated facts, her consent to the agreed upon discipline, which she has freely and voluntarily given, and her full awareness of the consequences of such consent (22 NYCRR 1240.8[a][5][i] and [iii]).
In March 2017, client DT wrote to respondent requesting that she represent him in a personal injury matter. However, between April and August 2017, respondent failed to respond to DT's letters about his case and to send a written retainer agreement. After DT complained to the AGC, respondent sent DT a retainer agreement in March 2018, which DT signed and returned. Respondent later commenced an action on DT's behalf in October 2018 by filing a summons with notice. The defendant demanded a complaint in December 2018, which respondent did not serve until March 2021. By failing to communicate with DT, respondent violated Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.4(a)(4); and, by failing to timely serve DT's complaint, she failed to act with reasonable diligence in violation of rule 1.3(a) and neglected a legal matter entrusted to her in violation of rule 1.3(b).
On April 20, 2018, respondent wrote a $210 check from her operating account to the Kings County Clerk's Office to purchase an index number in a case for client WR, which was dishonored. On that same date, respondent filed a summons with notice. The Clerk's Office repeatedly notified respondent between May and August 2018 of the dishonored check. Although respondent represented to the Clerk's Office that she would replace the dishonored check, she did not do so until October 2018, when the Clerk's Office complained to the AGC. Further, respondent failed to serve the summons with notice. By failing to promptly replace the dishonored check and failing to timely serve the summons with notice[*2], respondent failed to act with reasonable diligence in violation of rule 1.3(a) and neglected a legal matter in violation of rule 1.3(b).
Client ED retained respondent sometime in 2016 to represent him in three separate personal injury matters. Respondent commenced two of the actions in state court but failed to timely serve a summons with notice or to comply with the defendant's demand for a complaint in each action. Respondent also informed ED that she filed suit in federal court regarding the third personal injury matter. However, respondent did not file suit in federal court and waited until 2019 to inform ED that she did not file his claim because she did not believe that she could prove notice and liability. By failing to timely serve the summonses with notice and failing to serve the complaints, respondent failed to act with reasonable diligence in violation of rule 1.3(a) and neglected a legal matter entrusted to her in violation of rule 1.3(b). Further, respondent misrepresented the status of a legal matter to her client in violation of rules 1.4(a)(3) and 8.4(c).
In December 2016, client AC retained respondent to represent him in a personal injury action. Respondent did not file a summons with notice on AC's behalf until 2019, after the AGC contacted respondent with AC's complaint to the AGC. By waiting approximately 2½ years to file a summons with notice, respondent neglected a legal matter entrusted to her in violation of rule 1.3(b).
Client RD retained respondent in May 2016 to represent him in a personal injury action. In August 2017, respondent commenced the action on RD's behalf by filing a summons with notice. Respondent did not respond to RD's requests for paperwork and did not inform RD that she changed her address. Further, respondent took no action on RD's case from August 2017 until March 2021, when she filed a complaint on his behalf. By failing to inform RD of her change of address and failing to provide paperwork requested by RD, respondent failed to keep a client reasonably informed about the status of the matter in violation of rule 1.4(a)(3) and failed to respond to reasonable requests for information in violation of rule 1.4(a)(4). Further, by filing a summons with notice in August 2017, and failing to take further action on RD's case until the March 2021 filing of the complaint, respondent neglected a legal matter in violation of rule 1.3(b).
In April 2014, client JC retained respondent to represent her in a personal injury matter. Respondent commenced the lawsuit the following year. The defendant moved for summary judgment in January 2018. Respondent failed to submit opposition papers or to appear for oral argument, notwithstanding several adjournments. The court subsequently dismissed JC's action with prejudice.
After the time to move to renew and reargue had expired, respondent filed such motion. Respondent was granted several adjournments to submit reply papers, but again failed to submit such papers or to appear [*3]for oral argument. The court marked her motion off the calendar without a decision or order. Respondent then filed a second motion to renew and reargue, which was substantially identical to the first motion.[FN1] Respondent was granted two adjournments but still failed to submit reply/response papers. The court issued an order and decision on default, which granted the defendant's motion insofar as directing respondent to pay $200 in costs and enjoined her from filing further motions in the matter without prior leave of the court. In December 2019, respondent moved by order to show cause for vacatur of the court's order and to restore JC's matter to the calendar. The court adjourned the matter and directed respondent to submit a reply to the defendant's opposition seven days before the return date, which she failed to do.[FN2]
In failing to appropriately attend to court matters on behalf of JC, respondent neglected a legal matter entrusted to her in violation of rule 1.3(b). Further, by failing to timely move to reargue, respondent failed to act with reasonable diligence, in violation of rule 1.3(a).
In November 2017, client KJ retained respondent to represent him in a section 1983 wrongful arrest action. In April 2018, respondent filed suit on KJ's behalf in the U.S. District Court for the Southern District of New York, but the action was closed on April 13, 2018 because respondent did not file a complaint. In September 2018, respondent requested the case be reopened and a summons be issued as to the defendant. On October 1, 2018, the Clerk of the Court directed respondent to refile her request for a summons because of deficiencies in her first request, but she failed to do so. On March 19, 2019, the court ordered respondent to show cause why KJ's case should not be dismissed pursuant to Federal Rules of Civil Procedure rule 4(m) and warned that failure to respond would result in dismissal of the action. Respondent did not respond, and the court dismissed the action on March 28, 2019. By letter of the same date, respondent requested that the action be restored to the active calendar and asserted that she intended to fully proceed with her client's case and would "timely adhere to all court orders and scheduling orders issued by this Court on this case." The court denied her request.
In April 2019, respondent filed a second action, for the same matter, in the Southern District. The action was dismissed without prejudice in October 2019 after respondent failed to respond to the court's two prior directives to file proof of service of the summons and complaint. In November 2019, respondent filed a third action, for the same matter, in the Southern District. Respondent subsequently failed to serve defendant with information required by the Southern District's section 1983 case plan.[FN3] In July 2020, defendant submitted a letter to the court requesting a pre-motion to dismiss conference. Respondent did not respond to defendant's pre-motion letter notwithstanding [*4]the court's individual rules requiring her to respond within three business days.
On October 6, 2020, the court directed respondent to show cause why she should not be sanctioned for failure to comply with its individual rules. Respondent was also ordered to inform the court if she intended to amend the complaint and warned that this would be her last opportunity to do so in response to the defendant's motion to dismiss. By October 8, 2020 letter, respondent asked the court not to sanction her, asserting that she intended to fully proceed with her client's case and promised that she would "timely adhere to all court ordered and scheduling orders . . . ." By October 13, 2020 letter, respondent informed the court that she would amend the complaint by October 29, 2020, but she failed to do so.
The court then ordered respondent to appear for a November 19, 2020 hearing to show cause why she should not be sanctioned for failure to comply with its orders and failure to prosecute her client's case. She was also directed to inform her client in advance of the hearing that further failures to comply with the court's orders may result in dismissal of the case with prejudice. Respondent waited until the morning of the hearing, where both she and KJ appeared, to inform him. The court ordered respondent to file the amended complaint by November 20, 2020, which she did.[FN4]
In her representation of KJ, respondent violated rule 1.3(a) by failing to act with reasonable diligence; violated rule 1.3(b) by neglecting a legal matter entrusted to her; violated rule 1.4(a)(1)(iii) by failing to inform a client of a material development; and violated rule 1.4(a)(3) by failing to promptly inform a client about the status of his case. By continuing to disregard court orders after assuring the court in March 2019 and in October 2020, that she would "adhere to all court orders and scheduling orders," respondent engaged in conduct prejudicial to the administration of justice, in violation of rule 8.4(d).
Further, by engaging in a pattern of neglect over a period of years with multiple clients, respondent engaged in conduct that adversely reflects on her fitness as a lawyer, in violation of rule 8.4(h).
In aggravation, the parties cite to respondent's four prior Admonitions issued by the Second Department, which extended from 2010 through 2016 and included much of the same type of conduct as she committed herein. In 2010, respondent was admonished for failing to enter into a written retainer agreement with a client or to provide the client with a letter of engagement, failing to timely cooperate with the Second Department AGC, and providing the committee with inaccurate and misleading information. In 2013, respondent was admonished for failing to communicate with, and timely respond to requests for information and documents from a U.S. bankruptcy trustee regarding a debtor whom respondent represented in a personal injury matter. In 2014, respondent was admonished for failing [*5]to communicate with, and timely respond to requests for information and documents from the bankruptcy trustee, and for a lack of diligence in, and neglect of, the debtor's personal injury matter. In 2016, respondent was admonished for lack of diligence and neglect in connection with a client's personal injury matter, failing to communicate with the client, and failing to timely cooperate with the committee.
Further, we note that the Second Department issued respondent an Advisement in 2003 for failing to communicate with a client; and a Letter of Caution in 2006 for neglecting a legal matter and for failing to communicate with a client.
In mitigation, the parties cite to respondent's substantial personal stress and adversity that occurred from 2005 to 2020. Respondent's 18-year marriage ended in divorce and respondent relocated her practice to be closer to her home and to her son of whom she had custody following the divorce. Respondent also became her mother's primary caregiver during this time. Respondent's mother experienced a number of health and financial issues, including loss of sight in her left eye and dementia, before she passed away on September 21, 2020. On December 20, 2021, respondent signed a Mental Health Monitoring Agreement with LAP. The agreement requires respondent to, inter alia, obtain a comprehensive psychiatric evaluation, attend all recommended treatment sessions, execute HIPAA forms permitting the flow of information between mental health care providers and LAP, contact her monitor on a weekly basis, and meet with the monitor once a month.
The parties attest that a two-year suspension along with successful completion of LAP is the appropriate sanction for respondent's "long-term pattern of neglect beginning in 2014 and continuing through 2020" where she, among other things, neglected seven client matters, failed to communicate with clients, failed to act with reasonable diligence, misrepresented the status of a case to a client and had a prior disciplinary history.
This Court's precedent in disciplining attorneys who exhibited a pattern of neglect towards client matters and who made misrepresentations to clients has generally ranged from a two- to four- year suspension, depending on the magnitude of the misconduct and the factors in mitigation and aggravation (see Matter of Joffe, 158 AD3d 11 [1st Dept 2018] [two-year suspension for, inter alia, neglect of two immigration matters, false statements, submission of falsified documents to AGC, lack of sincere remorse, and three prior Admonitions, one of which was for neglect]; Matter of Samuely, 80 AD3d 163 [1st Dept 2010] [two-year suspension for, inter alia, neglect of four immigration matters, repeated misrepresentations to the affected clients to conceal such neglect, submission of falsified document to Virginia's DMV, prior Admonition, treatment for anxiety]; Matter of Segal, 190 AD2d 295 [1st Dept 1993] [two-year suspension for, inter alia, neglect of nine matters[*6], four of which were criminal appeals, prior Admonition for neglect, and, in mitigation, attorney's obsessive compulsive disorder which reportedly prevented him from acknowledging errors]).
The parties acknowledge that lengthier suspensions of three and four years have been imposed for arguably comparable misconduct (see e.g., Matter of Topal, 77 AD3d 152 [1st Dept 2010] [four-year suspension for, inter alia, neglect of five personal injury matters over 10-year period and lying to clients to conceal such misconduct]; Matter of Kreitzer, 229 AD2d 188 [1st Dept 1997] [three-year suspension for neglect of 12 matters and misrepresentations to at least one client concerning the status of her case, four prior Admonitions]). However, we note that respondent has accepted responsibility for her misconduct, cooperated with the AGC, and that the parties herein jointly move for discipline by consent.
While respondent's lack of diligence and neglect of client matters over a decade is indeed troubling, her misconduct directly overlapped with significant personal adversity, and she has taken measures to improve her mental health by enrolling in LAP.
Accordingly, the motion for discipline by consent pursuant to 22 NYCRR 1240.8(a)(5) should be granted, respondent is suspended from the practice of law for a period of two years and is directed to successfully complete LAP for such duration as directed by the program. The petition of charges is denied as moot.
All concur.
IT IS ORDERED that the joint motion for discipline by consent pursuant to 22 NYCRR 1240.8(a)(5) is granted, and respondent Pamela S. Roth, admitted as Pamela Susan Roth, is suspended from the practice of law in the State of New York for a period of two years, effective July 29, 2022 and until further order of this Court , and is directed to successfully complete the New York City Bar Association's Lawyer's Assistance Program for such duration as directed by the program, and
IT IS FURTHER ORDERED that, pursuant to Judiciary Law § 90, during the period of suspension and until further order of this Court, respondent Pamela S. Roth, admitted has Pamela Susan Roth, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other pubic authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding herself out in any way as an attorney and counselor-at-law, and
IT IS FURTHER ORDERED that respondent Pamela S. Roth, admitted has Pamela Susan Roth, shall comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 12540.15), which are made part of hereof; and
IT IS FURTHER ORDERED that if respondent Pamela S. Roth, admitted has Pamela Susan Roth, has been issued a secure pass by the Office of Court Administration, it shall [*7]be returned to the issuing agency, and
IT IS FURTHER ORDERED that the petition of charges is denied as moot.
Entered: June 28, 2022

Footnotes

Footnote 1: The defendant opposed and filed a cross motion seeking costs, arguing that such were warranted because respondent's postjudgment motions were frivolous. Although the court granted the motion insofar as it sought costs, the court opined that respondent's conduct did not rise to the level required for sanctions.

Footnote 2: Respondent ultimately settled JC's case with the defendant.

Footnote 3: The Southern District's section 1983 case plan requires a plaintiff to serve a release under New York CPL 160.50 for the plaintiff's sealed arrest records for the arrest at issue and a list of the plaintiff's prior arrests, when the plaintiff files a complaint.

Footnote 4: The case was later dismissed for failing to state a claim upon which relief can be granted.